UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERISA LYN PICKELL,

       Plaintiff,                      CIVIL ACTION NO. 14-cv-12824

       v.                              DISTRICT JUDGE MATTHEW F. LEITMAN

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

      Plaintiff Terisa Pickell seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g).  (Docket no. 1.)  Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 12).  The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  (Docket no. 2.)  The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      RECOMMENDATION

      For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 10) be GRANTED IN PART and Defendant's Motion for Summary Judgment (docket no. 12) be DENIED.  It is further recommended that the Commissioner's denial of Plaintiff's claims for benefits be reversed and this matter be remanded pursuant to

sentence four of 42 U.S.C. § 405(g) for further proceedings in consideration of Plaintiff's moderate difficulties with concentration, persistence, or pace.

## II. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of September 27, 2011, alleging that she has been disabled since May 1, 2008, due to memory loss, a back injury, two herniated discs, a splenectomy, irritable bowel syndrome, high eye pressure, and "ITP Immune Thrombouytopenia Purpren." (TR 102-08, 116, 120.) The Social Security Administration denied Plaintiff's claims on November 29, 2011, and Plaintiff requested a *de novo* hearing. (TR 48-57, 65.) On November 1, 2012, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Thomas L. Walters. (TR 21-47.) In a January 11, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 9-17.) The Appeals Council declined to review the ALJ's decision (TR 1-4), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter as well as a thorough summary of her medical record and hearing testimony. (Docket no. 10 at 3-10.) The ALJ set out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision. (TR 13-16, 17.) Defendant adopts the ALJ's factual recitation and concurs with Plaintiff's factual summary to the extent that it is consistent with that of the ALJ. (Docket no. 12 at 5.) There are no material inconsistencies between Plaintiff's and the ALJ's accounts of the record; therefore, the undersigned will

2

incorporate these factual recitations by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged onset date of May 1, 2008 and the date last insured of March 31, 2011, and that Plaintiff suffered from the following severe impairments: degenerative disc disease lumbar spine, ocular hypertension, episcleritis, irritable bowel syndrome (IBS), idiopathic thrombocytopenic purpura (ITP) status post splenectomy, and depression with symptoms of memory loss. (TR 11.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 11-13.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited [to] no prolonged walking beyond 100 yards and is unable to work around moving machinery or unprotected heights. In addition, the claimant is limited to unskilled work with limited dealings [with] the public.

(TR 13-16.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 16-17.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from May 1, 2008, through the date last insured of March 31, 2011. (TR 17.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining

whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.  Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)  Plaintiff was not presently engaged in substantial gainful employment; and

(2)  Plaintiff suffered from a severe impairment; and

4

  (3)  the impairment met or was medically equal to a "listed impairment;" or

  (4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

  **C.**  **Analysis**

  The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. §

405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four because (1) "[t]he ALJ's RFC analysis fails to adequately account for [P]laintiff's physical problems and is unsupported by substantial evidence" and (2) "[t]he ALJ's analysis of [P]laintiff's mental limitations was not supported by substantial evidence and his RFC assessment does not incorporate limiting factors he himself found existed." (Docket no. 10 at 12-18.)

> 1. *The ALJ's Assessment of Plaintiff's Physical RFC*
>
>> a. <u>Plaintiff's ITP Impairment</u>

In step two of the sequential evaluation process, the ALJ found that Plaintiff had a severe impairment of idiopathic thrombocytopenic purpura (ITP) status post splenectomy. (TR 11.) Plaintiff informs that ITP is defined by Mayo Clinic as a disorder that can lead to easy or excessive bruising or bleeding as a result of unusually low platelet levels. (Docket no. 10 at 5.) Plaintiff argues that the ALJ's physical RFC assessment does not account for the limitations suffered by Plaintiff as a result of ITP. (*Id*. at 12-13.) In his decision, the ALJ acknowledged that Plaintiff's ITP had been in remission until a couple years prior and that her recent treatment for ITP was quite involved. (TR 14.) He noted that Plaintiff suffered symptoms of fatigue, increased bruising, cold sweats, and general achiness. The ALJ then discussed the findings of Plaintiff's treating physicians of pain in Plaintiff's upper left quadrant, mild bruising in Plaintiff's upper extremities, and a lack of edema or petechiae. The ALJ also discussed the ineffectiveness of Plaintiff's medications and the splenectomy that Plaintiff eventually

underwent. Finally, the ALJ pointed out that Plaintiff's platelet levels had since stabilized, but were not yet in a normal range. The ALJ found that Plaintiff had the physical residual functional capacity to perform light work except that she was unable to walk distances greater than 100 yards and could not work around moving machinery or unprotected heights. (TR 13.)

Plaintiff claims that the ALJ's analysis of Plaintiff's ITP and the resulting physical RFC is inadequate. As support for her position, Plaintiff recites her subjective complaints of fatigue, pain, and trouble sleeping, as well as her claims that she takes frequent daily naps. Plaintiff also directs the Court's attention to the VE's testimony that Plaintiff's alleged postural limitations combined with Plaintiff's daily schedule, in which she spent most of her day trying to accommodate her limitations, pain, and frequent periods of lying down, would preclude work. (Docket no. 10 at 12-13 (citing TR 45).) Nevertheless, Plaintiff is unable to point to any opinion from her treating physicians regarding her functional limitations caused by the ITP on which the ALJ should have relied. Also, other than a self-proclaimed need to take daily naps, Plaintiff does not specify what additional functional limitations the ALJ should have included in the physical RFC. The ALJ adequately considered the objective medical evidence and Plaintiff's subjective complaints regarding her ITP diagnosis in formulating Plaintiff's physical RFC. As further discussed below, the ALJ properly found those subjective complaints to be incredible.

### b. Plaintiff's Credibility

Next, Plaintiff challenges the ALJ's credibility finding. (Docket no. 10 at 13-15.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a

determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Here, the ALJ considered and discussed Plaintiff's medical record and hearing testimony and found that Plaintiff's allegations of total disability were not entirely credible. (TR 15.) In making this determination, the ALJ reasoned that Plaintiff's self-described daily activities were

8

not limited to the extent that one would expect given her complaints of disabling symptoms and limitations. The ALJ then cited several examples of Plaintiff's daily activities, such as preparing simple meals, doing housework, caring for her pets, shopping, reading, crocheting, driving and riding in a car, socializing with friends and family, and going for short walks. The ALJ also reasoned that the limited amount of treatment sought by Plaintiff was unexpected in light of her allegations. The ALJ specifically noted that Plaintiff had not participated in outpatient psychotherapy for her alleged mental impairments and had not undergone regular treatment for her back impairment.

Plaintiff argues that the daily activities cited by the ALJ in his credibility analysis do not support a finding that Plaintiff can perform light work and that the physical effort required to perform those activities would not even rise to the level applicable to sedentary work. (Docket no. 10 at 13-14.) Defendant argues that the "issue is not, however, whether Plaintiff's daily activities are equivalent to light work activities." (Docket no. 12 at 13.) The Court agrees; Plaintiff's argument misses the mark. The ALJ did not find that Plaintiff can perform light work because she is able to perform the aforementioned daily activities. Rather, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were less than credible in light of Plaintiff's ability to perform those activities. Furthermore, the ALJ did not base his credibility determination solely on Plaintiff's daily activities; he also considered the record evidence and factored Plaintiff's lack of treatment for her mental and back impairments into his assessment. The undersigned finds that the ALJ's decision is sufficiently specific to make clear to Plaintiff and to the Court the weight that he gave to Plaintiff's statements and the reasons for that weight. The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence.

     c.  The State Agency Medical Consultant's Opinion

 Plaintiff also challenges the ALJ's decision to give great weight to the opinion of the State agency medical consultant, Dr. B.D. Choi, M.D. (Docket no. 10 at 15.) Social Security Ruling 96-6p states that an ALJ must consider the findings made by State agency medical consultants regarding the nature and severity of an individual's impairments as expert opinion evidence of a nonexamining source. SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996). The Ruling further states that ALJ's are not bound by findings made by State agency physicians, but they may not ignore these opinions and must explain the weight given to these opinions in their decisions. *Id*. The opinions of State agency medical consultants "can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, [and] the consistency of the opinion with the record as a whole . . . ." *Id*.

 On November 29, 2011, Dr. Choi examined Plaintiff's medical records and determined that Plaintiff was able to perform light work with occasional postural and environmental limitations. (TR 53-55.) Specifically, Dr. Choi found that Plaintiff was able to lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, or crawl; but should avoid concentrated exposure to extreme temperatures, humidity, vibrations, and hazards. The ALJ found that Dr. Choi's RFC assessment was reasonable and consistent with the objective medical evidence and assigned great weight to Dr. Choi's opinion. (TR 15-16.)

Plaintiff argues that the ALJ erred in assigning great weight to Dr. Choi's opinion because Dr. Choi did not examine Plaintiff and did not have Plaintiff's full medical record before him. Dr. Choi's RFC assessment reveals that he reviewed Plaintiff's records dated as late as September 2011 (TR 54); however, Plaintiff claims that Dr. Choi had insufficient knowledge of Plaintiff's subsequent progress, especially because he did not examine Dr. Beekman's November 2011 and April 2012 findings. As Defendant points out, though, Dr. Beekman's November 2011 and April 2012 findings (TR 296-99) are beyond the relevant time period, as Plaintiff's date last insured was March 31, 2011. (Docket no. 12 at 15.) More importantly, Dr. Beekman's November 2011 and April 2012 findings offer no new evidence regarding Plaintiff's condition during the alleged period of disability. Accordingly, the fact that Dr. Choi did not have access to Plaintiff's complete medical record when he assessed Plaintiff's physical RFC does not mandate a discounting of his opinion.

Plaintiff further asserts that the ALJ should have relied on Plaintiff's testimony or the findings of her "various treating physicians" instead of Dr. Choi's opinion. (Docket no. 10 at 15.) But an ALJ is only required to rely on a claimant's testimony to the extent he finds it credible, and as discussed above, the ALJ found that Plaintiff's allegations were not entirely credible. With regard to Plaintiff's "various treating physicians," Plaintiff does not point to any medical opinion from a treating physician on which the ALJ should have relied, and the Court finds none. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec.*, No. 09-13700 (E.D. Mich. Mar. 2, 2011)) (The "'court is under no obligation to scour the record for errors not identified by [the] claimant.'"). Defendant correctly argues that "[w]here the record contains no detailed functional assessment for Plaintiff from her treating physicians, the functional capacity assessment from Dr.

11

Choi remains important evidence upon which the ALJ was entitled to rely." (Docket no. 12 at 15-16 (citing *Watts. v. Comm'r of Soc. Sec.*, 179 F. Appx 290, 294 (6th Cir. 2006) ("[N]one of [the plaintiff's] treating doctors during the relevant period . . . made detailed functional capacity analyses, which leaves the functional capacity forms from the medical reviewers as the best evidence.")).)  Plaintiff's arguments with regard to the ALJ's assessment of Dr. Choi's opinion fail.

Finally, Plaintiff challenges the ALJ's explanation of his physical RFC assessment, that "[t]he objective findings and symptoms have been reasonably considered within the above residual functional capacity and there is no evidence to support further physical restrictions," as inadequate where the ALJ expressly found problems and then failed to account for those problems in Plaintiff's RFC.  (Docket no. 10 at 15.)  Plaintiff does not further develop this argument with relevant law or facts, and the Court declines to address it.  As discussed herein, each of Plaintiff's arguments in support of his overall position that the ALJ's physical RFC determination is unsupported by substantial evidence fail.  Plaintiff's Motion should be denied in this regard.

          2.      *The ALJ's Assessment of Plaintiff's Mental RFC*

Plaintiff asserts that the ALJ's assessment of Plaintiff's mental RFC, which limits Plaintiff to unskilled work and limited dealings with the public, does not account for Plaintiff's mental impairments and limitations.  (Docket no. 10 at 16.)  In step three of the sequential evaluation process, the ALJ evaluated Plaintiff's severe mental impairment of "depression with symptoms of memory loss" pursuant to 20 C.F.R. § 404.1520(a) and concluded that Plaintiff had mild restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and had suffered no

episodes of decompensation. (TR 11-13.) Neither party challenges these findings. Essentially, then, Plaintiff's argument is that the ALJ did not include these limitations caused by his mental impairments in the RFC.

Indeed, Plaintiff specifically argues that the ALJ's mental RFC assessment and the hypothetical questions posed to the VE failed to take into account her moderate deficits in concentration, persistence, or pace as determined by the ALJ himself. (Docket no 10 at 16-18.) The ALJ is required to present a hypothetical question that "accurately portrays [the plaintiff's] individual physical and mental impairments" in order for the VE's response to constitute substantial evidence. *Varley*, 820 F.2d at 779 (citations omitted). When the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's . . . limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844-BC, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted). However, a claimant with moderate deficits in concentration, persistence, or pace may be unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

Plaintiff relies on *Edwards, supra*, and *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) to support her argument for remand on this matter. (Docket no. 10 at 17.) Plaintiff asserts that the *Ealy* court reversed an ALJ's decision where the ALJ limited the claimant to simple, routine work without further explanation of how the claimant's limitations

13

with regard to attention and concentration impacted the claimant's ability to work. (*Id*.) Defendant, however, points to a decision from this district that clarifies the holding in *Ealy* and deflates Plaintiff's argument. (Docket no. 12 at 18 (citing *Despain v. Comm'r of Soc. Sec.*, No. 13-14378, 2014 WL 6686770, at *12 (E.D. Mich Nov. 26, 2014)).) In *Despain*, Magistrate Judge Whalen explained:

> . . . *Ealy* does not hold that the terms "simple, repetitive, routine" or similar descriptives are intrinsically inadequate to address moderate CPP deficiencies. Rather, the *Ealy* Court determined that the hypothetical limitations of "simple, repetitive" (drawn from a non-examining medical source) impermissibly truncated the source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'"

*Despain*, 2014 WL 6686770, at *12 (citing *Ealy,* 594 F.3d at 516). Defendant further cites *Despain* for the notion that the ALJ in this matter "was not required to include moderate limitations in concentration, persistence, or pace in the hypothetical question to the vocational expert." (Docket no. 12 at 18.) But *Despain* does not stand for that notion. Rather, Magistrate Judge Whalen stated that "the ALJ was not required include *the phrase* 'moderate limitations in concentration, persistence, or pace' in the question to the VE." *Despain*, 2014 WL 6686770, at *13 (emphasis added). Furthermore, *Despain* is distinguishable from the instant matter because the ALJ in *Despain* limited the claimant to "simple, routine, repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes." *Id*., at *12. Such limitations are more extensive than the ALJ's mental RFC assessment in this matter, in which the ALJ limited Plaintiff to "unskilled work with limited dealings [with] the public."

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ

independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must incorporate these limitations into the hypothetical questions." *McPhee v. Comm'r of Soc. Sec.*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Furthermore, "[w]here the ALJ finds that a claimant has deficiencies in concentration, persistence and pace, [the] failure to account for such deficiencies in the hypothetical question constitutes reversible error." *Kretzmer v. Comm'r of Soc. Sec.*, No. 11-15623, 2012 WL 6642637, at *4 (E.D. Mich. Dec. 20, 2012) (citations omitted). Courts are more likely to order a sentence four remand in cases where the ALJ made the finding of moderate deficiencies in concentration, persistence, or pace in the absence of a medical opinion which found similar moderate deficiencies and which indicated that the plaintiff was still capable of sustained work. *Cwik v. Comm'r of Soc. Sec.*, No. 10-15121, 2012 WL 1033578, at *10 (E.D. Mich. Feb. 23, 2012) (citing *Hicks v. Comm'r of Soc. Sec.*, No. 10-13643, 2011 WL 6000701, at *4 (E.D. Mich. Nov. 28, 2011)).

Here, the ALJ stated that the record evidence, including Plaintiff's hearing testimony, reveals that Plaintiff "has some difficulty in sustaining focus, attention, and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." (TR 12.) Plaintiff's medical record, however, contains no medical opinions from Plaintiff's mental health providers regarding the functional limitations resulting from Plaintiff's depression. Hence, the ALJ made an independent finding that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace. The ALJ then fashioned an RFC and posed a hypothetical question to the VE that merely limited Plaintiff to unskilled work. (TR 13, 44.) It is well established that the difficulty of a task does not necessarily equate to the difficulty of staying on task. *See e.g., Green v. Comm'r*, No. 08-CV-11398-DT, 2009 WL

15

2365557, at *10 (E.D. Mich. July 28, 2009). The ALJ did not adequately address concentration, persistence, or pace limitations in her mental RFC assessment or hypothetical question to the VE. Without discussion from the ALJ, the Court is not able to assess whether the VE's testimony constitutes substantial evidence. Accordingly, Plaintiff's Motion regarding the ALJ's assessment of Plaintiff's mental RFC should be granted, and this matter should be remanded for further proceedings in consideration of Plaintiff's moderate difficulties with concentration, persistence, or pace.

## VI. CONCLUSION

For the reasons stated herein, the Court should GRANT IN PART Plaintiff's Motion for Summary Judgment (docket no. 10) and DENY Defendant's Motion for Summary Judgment (docket no. 12). The Commissioner's denial of Plaintiff's claims for benefits should be reversed, and this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in consideration of Plaintiff's moderate difficulties with concentration, persistence, or pace.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and

Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 12, 2015         s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 12, 2015         s/ Lisa C. Bartlett
                               Case Manager